EDGERSON, APPELLEE, *v.* CLEVELAND ELECTRIC ILLUMINATING COMPANY ET AL., APPELLANTS.

(Nos. 48389 and 48395 — Decided August 5, 1985.)

*Dunn, Kraig & Guttman, Richard W. Dunn* and *Kerry B. DeWolfe,* for appellee.

*Squire, Sanders & Dempsey, Richard W. McLaren, Jr., Robin G. Weaver* and *Frank A. DiPiero,* for appellant Cleveland Elec. Illum. Co.

*McNeal, Schick, Archibald & Biro* and *Harley J. McNeal,* for appellant Scott & Fetzer Co.

NAHRA, J. On August 31, 1979, Larry Edgerson, appellee, was injured when he fell from a tower he was painting due to an electrical shock. The tower was located on the premises of appellant Adalet-PLM Division, Scott & Fetzer Company (hereinafter "Adalet"). At least eight feet above the tower were electrical power lines owned and operated by appellant Cleveland Electric Illuminating Company (hereinafter "CEI").

Appellee filed suit against Adalet and CEI on April 16, 1981, seeking $1,000,000 in damages. The case was tried to a jury of eight in September 1983. After hearing all of the evidence, the trial court directed a verdict against CEI on the issue of negligence, but submitted the issue of proximate cause to the jury. The jury returned a verdict of $110,000 and found CEI fifty percent liable ($55,000), Adalet thirty percent liable ($33,000) and appellee twenty percent liable.

Appellee moved for prejudgment interest pursuant to R.C. 1343.03(C).[1] Following a hearing on appellee's motion, the trial court concluded that Adalet and CEI failed to make a good faith effort to settle the case and, in fact, acted in bad faith, and that appellee did not fail to make a good faith effort to settle. Accordingly, the trial court awarded appellee prejudgment interest from both appellants at the rate of ten percent per annum from the date of the accident, August 31, 1979, to the date of payment.

Adalet and CEI timely appealed the prejudgment interest award. On January 31, 1985, this court sustained CEI's first assignment of error and remanded the case to the trial court for findings of fact and conclusions of law. Having received those findings, we will now address Adalet's assigned error and CEI's remaining assignments of error.

I

Adalet's assignment of error is that: "The court erred and abused its discretion in ordering Adalet to pay prejudgment interest; and, in determining the defendant, Adalet-PLM Division, the Scott & Fetzer Company, (1) 'failed to make a good faith effort to settle the case'; and, (2) that the plaintiff, Larry Edgerson, 'clearly demonstrated at the hearing that defendants' refusal to make any offer whatsoever in settlement of plaintiff's claim at pre-trial hearing and trial stages constituted bad faith — conduct going beyond mere bad judgment or negligence'; and, that (3) 'defendants' conduct throughout this case imported a dishonest purpose, conscious wrongdoing and breach of a known duty based on an ulterior motive or ill-will in the nature of fraud'; and, (4) 'plaintiff, Larry Edgerson, did not fail to make a good faith effort to settle the case.' "

CEI's corresponding and third assignment of error is that:

"The trial court erred in awarding prejudgment interest to plaintiff-appellee Edgerson."

An award of prejudgment interest pursuant to R.C. 1343.03(C) involves the

---

[1] R.C. 1343.03(C) provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

determination of factual issues by the trial court. *Black* v. *Bell* (1984), 20 Ohio App. 3d 84, 87. Accordingly, this court should not reject the trial court's findings when they are supported in the record by some competent evidence. *Id* at 88; cf. *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336 (decision supported by sufficient evidence) with *Hardiman* v. *Zep Mfg. Co.* (1984), 14 Ohio App. 3d 222 (decision not supported by sufficient evidence) and *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3 (decision unsupported in the record); see, also, *Carmo* v. *Frankel* (1984), 17 Ohio Misc. 2d 3 (prejudgment interest denied).

With respect to appellee, the trial court made the following relevant findings:

"That counsel for the Plaintiff contacted the Defendants and/or their representatives within days of the accrual of the cause of action;

"That suit was filed by the Plaintiff on April 16, 1981, seeking damages in the amount of $1,000,000.00 and thereafter all parties engaged in discovery proceedings;

"That Plaintiff reduced his demand to $350,000.00 at the pretrials which were held in 1982 before Judge Ann McManamon;

"That Defendants were provided with Plaintiff's expert witnesses' reports more than one year prior to trial. Said reports indicated that in the experts' opinion, the Defendants were negligent and said negligence was the proximate cause of Plaintiff's injury;

"That at a final pretrial on September 16, 1983, Plaintiff reduced his demand to $250,000.00;

"That Plaintiff's demand of September 16, 1983, was negotiable. Both of the attorneys for Plaintiff at the final pretrial had extensive experience in negotiating personal injury claims both as attorneys and claims adjusters. That Plaintiff's counsel were in the

unacceptable position of having to bid against themselves in the absence of any offer by the Defendants. Plaintiff's counsel were not obligated to continue to bid against themselves when no offer was forthcoming from the Defendants;

"That counsel for the Plaintiff would have discussed any offer made by the Defendants with their client.

"That Plaintiff's final pretrial demand was not unreasonable given the Defendants' unwillingness to offer any amount in settlement, the liability as evidenced by the expert reports obtained by Plaintiff, and the injuries suffered by the Plaintiff; and

"That during the course of the trial, counsel for the Plaintiff continued to attempt to settle the case."

Based on these findings, the trial court concluded that appellee did not fail to make a good faith effort to settle the case.

The trial court's findings and conclusion are supported in the record. Mr. Dunn's (plaintiff's attorney's) $250,000 demand was non-negotiable only to the extent that no offers from the defendants were made and he was being forced to bid against himself. Otherwise, he would have discussed any offer with his client.

With respect to Adalet, the trial court made the following findings in addition to the pertinent findings above:

"That neither Defendant ever made an offer of any amount in settlement of this case;

"That Defendant, Adalet-PLM's insurance carrier, had reserved the case at $15,000.00 to $25,000.00 and was prepared to recommend a settlement of $25,000.00 although no such offer of settlement was ever made to the Plaintiff; and

"That during the course of the trial, the expert witness testifying on behalf of the Defendant, Adalet-PLM, testified that the subject premises which were under the control of the Defendant,

Adalet-PLM, constituted a dangerous condition."

Based on these findings, the trial court concluded that Adalet failed to make a good faith effort to settle the case.

The record herein fully supports these findings and the lower court's conclusion. Mr. Dillon, Hartford Insurance Company's representative, testified that he was prepared to offer $10,000-$12,000 to settle the case at the final pretrial based on the fact that appellee was injured on Adalet's premises. Although he believed appellee to be negligent, he did concede some minimal exposure on Adalet's part. However, no offer was made because he believed appellee's $250,000 demand was not negotiable. In effect, this amounts to no effort to settle and cannot meet the statutory mandate of "a good faith effort to settle."

Adalet suggests that the court should have made further efforts towards settlement and that had the court done so, an offer would have been forthcoming from Adalet. Although settlement of cases is an objective of pretrial proceedings and at least the local rules encourage settlement efforts on the part of the trial court, the prejudgment interest statute places the burden on the parties themselves, which burden cannot be shifted to the court. Moreover, it should not be assumed that settlement efforts are only to be judged by what transpires at court hearings. The statute encourages settlement which, of course, can take place at any time. The court's finding that Adalet did not make a good faith effort to settle is supported by the evidence and will not be disturbed.

With respect to CEI, the trial court made the following findings in addition to the relevant findings above:

"That Defendant CEI never provided Plaintiff with any expert witness reports of any type nor with the names of any experts whom they intended to call to testify at trial;

"That neither Defendant ever made an offer of any amount in settlement of this case; and

"That at the conclusion of all the evidence, a verdict was directed against the Defendant, CEI, on the issue of negligence; CEI having failed to present any testimony on its behalf."

From these findings, the trial court concluded that CEI failed to make a good faith effort to settle.

CEI's position is that after a full investigation of the case, which included the deposition testimony of the plaintiff, it was clearly not liable for plaintiff's injuries. This was because plaintiff was eight feet from CEI's wires, electricity jumps only one-half *inch*, and the electric box which was within plaintiff's reach was the responsibility of Adalet, not CEI.

The question thus presented is whether a party must make some offer of settlement when it has a good faith belief that it has *no* liability? We hold that if a party has a good faith belief that it has no liability, it is not required to make some offer of settlement to avoid payment of prejudgment interest. Cf. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 277 (the refusal to pay insurance is not, in itself, conclusive of bad faith). Here CEI's position was clear that although its wires being eight feet *above* the building might have been negligence, such negligence was not a proximate cause of plaintiff's injuries since plaintiff had admitted he was painting in a prone position and not in proximity to CEI's wires. On the other hand, if a party adopts the position that it has a complete defense but does not have a reasonable basis for such a position, then the absence of an offer to settle may be evidence of the lack of a good faith effort to settle. See, *e.g., Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185 [39 O.O. 465]. CEI's position was

reasonable and did not warrant a finding of a lack of good faith. Its assignment of error is therefore sustained.

## II

CEI's second assignment of error is that:

"The trial court erred in refusing to hold that Ohio Revised Code Section 1343.03(C) is unconstitutional."

The first issue raised hereunder is whether "the phrase 'good faith effort' as used in Section 1343.03(C) is vague and indefinite, thereby rendering that section violative of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of Ohio's Constitution."

When a statute is challenged as being unconstitutionally vague, the statute will be judged on its face only if the statute impinges upon the freedoms guaranteed by the First Amendment to the United States Constitution. *United States* v. *Powell* (1975), 423 U.S. 87, 92; *Cleveland Bakers Union* v. *State* (1981), 3 Ohio App. 3d 57, 59. In all other cases, the vagueness of a statute is determined as applied to the facts of the case before the court. *Powell, supra; Bakers Union, supra.* When evaluating a claim of vagueness, a court must be fairly lenient when the statute is not concerned with criminal conduct or First Amendment considerations. *Doe* v. *Staples* (C.A. 6, 1983), 706 F.2d 985, certiorari denied (1984), 465 U.S. 1033. Uncertainty in a statute will not constitute a deprivation of due process unless the statute is substantially incomprehensible so as to amount to no rule or standard at all. *Id.* (quoting *Exxon Corp.* v. *Busbee* [C.A. 5, 1981], 644 F.2d 1030, 1033, certiorari denied [1981], 454 U.S. 932).

Although not specifically defined in R.C. 1343.03(C), the phrase "good faith effort" has been judicially construed to include:

"(a) an affirmative effort to gather relevant data, (b) an affirmative effort to disclose relevant data to the adversary, (c) an affirmative effort to evaluate that party's litigation risks and prospects reasonably, and (d) an affirmative effort to propose settlement consistent with that reasonable evaluation."

*Black* v. *Bell, supra,* at 88; *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336, 338 (Markus, J., concurring).

After a careful review of the record, we conclude that R.C. 1343.03(C) is not unconstitutionally vague when applied to the facts in this case.

The second issue[2] raised is whether "Section 1343.03(C) embodies an unconstitutional deprivation of defendant's right to trial by jury."

Although CEI recognizes that this court has previously decided that R.C. 1343.03(C) is not unconstitutional on this ground, *Hardiman* v. *Zep Mfg. Co.* (1984), 14 Ohio App. 3d 222, 227-228, CEI respectfully contends that "the *Hardiman* majority failed properly to characterize the scope and functions of Section 1343.03(C) and to recognize that the provision effectively terminates a right guaranteed by the Ohio Constitution." We are not persuaded, however, to overrule our decision in *Hardiman*.

The third issue raised is whether "Section 1343.03(C) violates the equal protection provisions of the Ohio and United States Constitutions."

CEI contends that the denial of equal protection results from the man-

---

[2] This issue and the other remaining constitutional challenges have been rendered moot based upon our decision that the prejudgment interest award against CEI be vacated. However, in order to comply with App. R. 12(A), we will address the remaining issues raised by CEI.

datory requirement of the prejudgment interest statute that any award begin from the time the cause of action accrues, regardless of the time a plaintiff files suit. We do not believe, however, that R.C. 1343.03(C) treats plaintiffs and defendants differently. The duty to make good faith efforts to settle exists until judgment is rendered. Even if a plaintiff delays in commencing suit, a defendant can demonstrate a good faith effort to settle any time up to the date of trial and even during trial. A plaintiff's delay in bringing suit cannot prejudice a defendant's good faith effort to settle. Moreover, all plaintiffs and all defendants must make aggressive prejudgment settlement efforts. Therefore, since all parties must act diligently, all parties are similarly situated and we see no unequal classification resulting in an equal protection violation.

CEI's last issue is whether "Section 1343.03(C) may * * * be applied retroactively."

Section 28, Article II of the Ohio Constitution prohibits the passage of retroactive legislation. This section only applies to laws affecting substantive rights and not to those which are remedial in nature. *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70 [45 O.O.2d 370]; see *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32; *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100.

We conclude, as did the courts in *Mills* v. *Dayton* (1985), 21 Ohio App. 3d 208, and *Dailey* v. *Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App. 3d 39, that R.C. 1343.03(C) is remedial in nature and may be applied to actions which accrued prior to its enactment and tried thereafter. Contra *Central States Stamping Co.* v. *Lake County National Bank* (N.D. Ohio 1984), 587 F. Supp. 372. R.C 1343.03(C) simply compensates a plaintiff from the date of his injury when he has made a good faith effort to settle his case and a defendant

has not. The court in *Mills, supra,* at 209, stated that:

"The statute does not impose any new duties, rights, or obligations on the parties. The parties are already bound to make a good faith effort to settle their dispute by strong principles of justice and public policy. This is not a new cause of action for prejudgment interest as was found by the court below, but a means developed by the legislature to provide a procedural vehicle for the enforcement of the public policy which requires that lawsuits be settled at the first opportunity and imposes a civil sanction against a party who holds money to its own use against the lawful claim of the other party which claim is not seriously disputable. In other words, this statute removes some of the advantages of delay for a stakeholder such as an insurance company who continues to be able to use money which should be paid to another solely because of the deliberative process.

"As R.C. 1343.03(C) provides a civil sanction and is remedial in nature, it is to be applied from its effective date of July 5, 1982, to pending litigation. * * *"

Since we agree with and adopt the rationale of the court in *Mills*, this issue is overruled. Accordingly, CEI's second assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

*Judgment affirmed
in part
and reversed and
remanded in part.*

CORRIGAN, C.J., and PRYATEL, J., concur.

PRYATEL, J., concurring. Where a party or his representative *concedes* that

there was some liability ("although minimal"), that party has a duty to make an offer to settle within that range. Failure to do so constitutes a breach of good faith which warrants the application of R.C. 1343.03(C).

In this case, Adalet's insurance company, through its agent, conceded partial liability for the injuries sustained by Edgerson and stated that it would have offered between $10,000 and $12,000 (with a reserve of $15,000 to $25,000) had it believed that the $250,000 demand by Edgerson was negotiable.

Where, as here, the plaintiff reduced his demand from $1,000,000 to $350,000 and then to $250,000, but refused to lower it further in the absence of any offer from the defendant, the court was justified in concluding that the demand was negotiable.

A party cannot insulate himself from prejudgment interest by arbitrarily concluding that his adversary's demand is unrealistically high and, therefore, unworthy of any offer of settlement any more than a claimant can decide that his adversary's offer is so unrealistically low that he should not make a demand. Since Adalet conceded that it had some liability, its failure to make an offer amounted to a lack of good faith. Hence, the award here of prejudgment interest was proper.

CEI's denial of liability was based largely on the fact that Edgerson testified in his deposition that he thought the electrical shock he received came from a small electrical box located on the tower. The box was neither owned by nor supplied with energy from CEI. In addition, CEI relied on Edgerson's pretrial testimony that he was lying in a prone position while painting and was "quite a distance" (eight feet) from CEI's wires. The testimony, when combined with the opinion of Edgerson's own expert witness who admitted that it was physically impossible for elec-

tricity to arc eight feet[3] (the distance between plaintiff and the wire), supports CEI's position that it need not have made an offer. A party is not required to make an offer of settlement pursuant to R.C. 1343.03(C) if in *good faith* it believes it is not liable.

As to the issue of the retroactivity of R.C. 1343.03(C), I agree that it is remedial in nature. The prejudgment interest statute is similar in principle to the application of the comparative negligence statute which the Ohio Supreme Court held may be applied retroactively. See *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 104.

---

[3] Based on the voltage, the spark of electricity would arc only one-half inch between two conductors.