DECISION AND JUDGMENT ENTRY
Defendant-appellant, Denise Diab, and cross-claim defendants-appellants, Charles C. Washburn and Economy Transport, Inc. ("Economy"), appeal from judgments of the Erie County Court of Common Pleas.
The complaint of plaintiffs-appellees James F. Steele, et al. ("Steele") was filed March 22, 1994.[1] Steele's complaint requests monetary damages due to personal injuries he sustained on November 18, 1992. In her answer, Diab raised a cross-claim against Economy for indemnification. A default judgment was entered on the cross-claim on October 14, 1994.
On June 4, 1997, the morning of trial, Economy and Steele reached a settlement agreement. During trial, the following evidence was presented. On the early morning of November 18, 1992, Steele was operating a tractor-trailer rig eastbound on State Route 2 in Erie County, Ohio, when he observed a one car accident in the westbound passing lane. The disabled vehicle was facing north, the front against the guardrail, and Steele observed Diab slumped over the steering wheel.
Steele stopped his truck on the berm of the eastbound lane and activated his hazard lights. He transmitted a message on his CB radio warning other truck drivers of the disabled vehicle. Steele then approached the vehicle and observed Diab with blood coming from her forehead and chin. Diab appeared dazed and stated that she lived nearby and wanted to go home.
Just after Steele began conversing with Diab, two truck drivers, upon seeing the accident, pulled their trucks on the berm of the westbound lane and activated their hazard lights. Immediately thereafter, Judith McKay, operating an automobile westbound, saw the trucks on the berm and changed into the passing lane to avoid potential harm to a truck driver. McKay then noticed Diab's car and Steele and she was forced to slam on her brakes, barely avoiding a collision.
Steele began to remove blood from Diab's face with his handkerchief. At the same time Charles Washburn, a truck driver for Economy Transport, Inc., was traveling westbound and approaching the accident scene. He observed two trucks on the berm with their hazard lights activated. He changed to the passing lane as a safety measure and the next thing he saw was Steele jumping up and down and waving his arms. Washburn then hit his brakes as hard as he could. At the time, Washburn was carrying a light load and his truck jackknifed. He lost control of the truck and struck Steele, Diab's vehicle, and one of the trucks parked on the berm.
Steele was thrown approximately forty feet and sustained fractures to his left femur, left fibula, right fibula and had multiple lacerations and abrasions. In treating these injuries, a metal rod was inserted in his left femur. The injury to Steele's left femur prevented his return to his trucking job. Steele's income in 1991, the year before the accident, was $41,500.
Orthopedic surgeon, Dr. Patrick L. O'Connor, testified that he began treating Steele in December 1992. He gave the opinion that Steele would be unable to return to work in the near future; he stated that it has been four years since the accident and it is unlikely that there will be significant improvement.
Dr. Robert Ancell, a vocational rehabilitation counselor, testified that his training is in evaluating clients with physical or emotional problems, and determining their ability to become and remain employed. Ancell conducted vocational testing on Steele. The academic testing showed him as significantly below average. On the intelligence tests Steele's performance was average. Ancell also stated that Steele's physician would not release him to go back to work and, therefore, all he was capable of was sedentary work. He further noted that Steele was taking narcotic pain medication.
Using a statistical formula, Ancell concluded that Steele had approximately a twelve per cent probability of reemployment at a job paying $5 to $7 per hour. It was also noted that Steele lives in a rural area of Michigan.
Diab admitted that prior to the accident she had been drinking for approximately four hours. A blood sample drawn after the accident and tested by the Ohio State Highway Patrol revealed that her blood alcohol level was 143.
On June 9, 1997, the jury returned a general verdict in favor of Steele. Appellants timely filed notices of appeal.
In her appeal, Diab presents the following assignments of error:
 "I. THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT-APPELLANT DENISE DIAB'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL. (JUDGMENT ENTRY, MAY 18, 1998).
 "II. THE TRIAL COURT'S ERRONEOUS EXCLUSION OF VIDEOTAPED MEDICAL WITNESS TESTIMONY (TRANSCRIPT PP. 472-74) CONSTITUTES REVERSIBLE ERROR.
 "III. THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT-APPELLANT'S MOTION FOR SET-OFF IN THE AMOUNT OF CO-DEFENDANT'S SETTLEMENT (JUDGMENT ENTRY, MAY 18, 1998).
 "IV. THE TRIAL COURT ERRONEOUSLY AWARDED PREJUDGMENT INTEREST. (JUDGMENT ENTRY MAY 18, 1998)."
In its cross-appeal, Economy presents the following assignments of error:
 "I. THE TRIAL COURT INCORRECTLY ENTERED A DEFAULT JUDGMENT AGAINST CHARLES WASHBURN AND ECONOMY TRANSPORT, INC [SIC] ON DENISE DIAB'S CROSSCLAIM.
 "II. THE TRIAL COURT INCORRECTLY REFUSED TO VACATE THE DEFAULT JUDGMENT ENTRY ENTERED AGAINST CHARLES WASHBURN AND ECONOMY TRANSPORT, INC. ON DENISE DIAB'S CROSSCLAIM."
The court will first address Diab's direct appeal and then Economy's cross-appeal. In her first assignment of error, Diab argues that the trial court erroneously denied her motion for judgment notwithstanding the verdict or for a new trial.
When considering a motion for judgment notwithstanding the verdict, the trial court is to apply the same standard used in considering a motion for a directed verdict. See Gladon v.Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312,318-319, citing, Posin v. A.B.C. Motor CourtHotel (1976), 45 Ohio St.2d 271, 275.
Civ.R. 50 (A)(4) provides:
 "* * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In Strother v. Hutchinson (1981), 67 Ohio St.2d 282,284-285, the Ohio Supreme Court observed:
 "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50 (A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. [Citation omitted.] Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320
* * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115."
See, also, Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120; Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 679-680.
Civ.R. 59 (A) provides for the granting of a new trial under various grounds. The rule provides, in part:
"(A) Grounds.
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial.
"* * *
"(7) The judgment is contrary to law;
"* * *
 "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
It is well settled that "the granting of a motion for a new trial rests in the sound discretion of the trial court and will not be disturbed upon review absent an abuse of discretion." Bible v.Kerr (1992), 81 Ohio App.3d 225, 226.
Under this assignment of error, appellant first argues that the jury concluded that both parties engaged in willful, wanton or reckless conduct and, therefore, appellee was precluded from recovery and appellant is entitled to judgment as a matter of law. Conversely, appellee argues that when viewing intoto the instructions, interrogatories and verdict they are consistent with the jury finding that Steele was negligent rather than reckless.
As to appellant's conduct, the trial court instructed the jury as follows:
 "Willful misconduct is intentionally doing that which is wrong, or intentionally failing to do that which should be done.
"* * *
 "Wanton misconduct implies a failure to use any care for the Plaintiff and an indifference to the consequence when the probability that harm would result from such failure is great and such probability is known or ought to have been known to the Defendant."
As to Steele's act of rescue, the trial court instructed as follows:
 "You are to decide whether his action amounted to rash conduct by a reasonably prudent person under the same or similar circumstances. If you find that Plaintiff attempted — Plaintiff's attempt at rescue was rashly made, then the attempt to rescue was not justified and Plaintiff was negligent."
"* * *
 "One who comes to the rescue of another cannot recover if he rashly and recklessly exposed himself to danger. Yet where another is in great and imminent danger, one who attempts a rescue may be warranted by surrounding circumstances in exposing his limbs or life to a very high degree of danger. * * *. The contention that Mr. Steele was reckless is an affirmative defense. Defendant has the burden of proving by the greater weight or preponderance of the evidence that Mr. Steele acted with heedless indifference to the consequences and perversely disregarded a known risk for his own safety. If you find that the Defendant has not shown by the greater weight or preponderance of the evidence that Mr. Steele acted with heedless indifference to the consequences and perversely disregarded a known risk for his own safety, then you may not find that he was reckless."
The relevant jury interrogatories and responses provided:
"INTERROGATORY A
 "WAS MRS. DIAB'S CONDUCT WILLFUL, WANTON, OR IN CONSCIOUS DISREGARD FOR THE RIGHTS AND SAFETY OF OTHERS THAT HAD A GREAT PROBABILITY OF CAUSING SUBSTANTIAL HARM AND DID SUCH CONDUCT DIRECTLY AND PROXIMATELY CAUSE INJURY TO THE PLAINTIFF?"
"YES" was circled and the interrogatory was signed by eight jurors.
"INTERROGATORY C
 "WAS PLAINTIFF, JAMES STEELE, RASH AND/OR RECKLESS IN RESCUING OR ATTEMPTING TO RESCUE DENISE DIAB AND DID SUCH RASH CONDUCT AND/OR RECKLESSNESS PROXIMATELY CAUSE THE INJURY TO MR. STEELE?"
"YES" was circled and the interrogatory was signed by eight jurors.
In Interrogatory D, the jurors divided the negligence of the parties as fifteen per cent attributable to appellee and eighty-five per cent attributable to appellant. Finally, in Interrogatory E the jurors determined that Steele was entitled to $1,325,000 in damages.
The Ohio Supreme Court has held that judgment should not be rendered on jurors' answers to interrogatories unless such answers are inconsistent and irreconcilable with the general verdict. Otte v. Dayton Power Light Co. (1988),37 Ohio St.3d 33, 41, citing Becker v. BancOhio Natl. Bank
(1985), 17 Ohio St.3d 158. Here, the jurors found that appellee was "rash and/or reckless." Such finding could be interpreted as inconsistent with the verdict because the answer could be construed to mean that appellee was rash and reckless, reckless only, or rash only. A finding that appellee was rash, however, would be consistent with the general verdict. Therefore, since reasonable minds could reach different conclusions, including one consistent with the verdict, the trial court property denied appellant's motion for judgment notwithstanding the verdict. Likewise, the trial court did not abuse its discretion in denying a new trial as to this issue.
Appellant next argues that the numerous intervening events between her accident and appellee being struck entitle her to judgment as a matter of law on the issue of proximate cause. We find this argument unpersuasive. Reasonable minds could conclude that the intervening acts of appellee and others were part of a continuous sequence of events stemming from appellant's original negligence. See Strother v. Hutchinson, 67 Ohio St.2d at 287-288;State v. Theuring (1988), 46 Ohio App.3d 152, 154.
Accordingly, appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant argues that the trial court committed prejudicial error when it excluded the videotaped testimony of medical expert, Malcolm A. Brahms, retained by Economy, the settling defendant. The deposition was taken on June 2, 1997, the evening before trial. During the deposition, appellant conducted a cross-examination of Brahms. At trial, appellant sought to have the videotape played to the jury. Appellant cited Civ.R. 32 (A)(3) which permits, inter alia, the use of a deposition of a medical expert whether or not a party. Appellee objected arguing that it was improper for appellant to offer the testimony of a medical expert which he had cross-examined. The trial court disallowed the videotape. Appellant presented no medical expert testimony.
A trial court's ruling that certain evidence will be admitted or excluded at trial will not be reversed on appeal absent a showing of a clear and prejudicial abuse of discretion. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163. An abuse of discretion involves more than an error in judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Appellant relies on Civ.R. 32 (A) provides in relevant part:
"(A) Use of depositions.
 "Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing.
 "At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any one of the following provisions:
"* * *
 "(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (e) that the witness is an attending physician or medical expert, although residing within the county in which the action is heard"
Conversely, appellee argues that the videotape deposition was properly excluded because appellant attempted to use Brahms in her case-in-chief when, during the videotape deposition, appellant's counsel cross-examined him.
Generally, a party cannot cross-examine its own witness. Evid.R. 611 (C). A review of appellant's examination of Brahms indicates that appellant asked many leading questions. Further, when requesting use of the deposition, appellant failed to offer to edit the videotape or call Brahms to testify in person before the jury. We cannot say, when faced with a question of whether to admit a videotape deposition after the trial has commenced, that the trial court abused its discretion when it refused to allow the tape to be played. At the time it was refused, appellant made no further argument as to why it should be admitted, nor did she object to the finding.
Accordingly, we find appellant's second assignment of error not well-taken.
Appellant argues in her third assignment of error that the trial court erred when it denied her motion to set-off the $500,000 settlement with Washburn and Economy. Alternatively, appellant requests that she be given the opportunity to adjudicate Washburn's liability.
The Supreme Court of Ohio in Fidelholtz v. Peller
(1998), 81 Ohio St.3d 197, interpreted when set off, pursuant to R. C. 2307.33 (F),[2] is available. The court held that a defendant is entitled
 "to set off from a judgment funds received by a plaintiff to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person `liable in tort.' A person is `liable in tort' when he or she acted tortiously and thereby caused harm. The determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." Id. at 203.
The record contains conflicting affidavits of the respective parties' attorneys. Diab's counsel states that during a hearing on post-trial motions, Economy's counsel admitted that he and his clients evaluated Economy's liability at one third and, based upon that amount, decided to settle for $500,000. Conversely, Economy's counsel states in a sworn affidavit that he and his clients consistently denied liability and that they settled to avoid additional costs, the possibility of an adverse verdict and bad publicity. The trial court found that Economy settled in order to avoid the risk of an adverse verdict and denied the motion for set off.
Upon review of the record, we find that it does not conclusively establish that Economy's settlement was precipitated by their admission of liability. We further find that Diab was not afforded the opportunity to adjudicate whether such liability exists. Accordingly, appellant's third assignment of error is well-taken as it relates to the request for adjudication of appellee's liability.
In appellant's fourth and final assignment of error she disputes the trial court's award of prejudgment interest to appellee. The parties filed briefs on the matter and a hearing was held on February 2, 1998. On May 18, 1998, the trial court found that appellant failed to make a good faith settlement offer. The court concluded that appellant did not have an objectively reasonable belief that she had no liability due to the extent of appellee's injuries and the fact that she was intoxicated. Appellant disputes these findings.
Whether to grant an award of prejudgment interest rests with the trial court's sound discretion. Scioto Mem. Hosp. Assn.,Inc. v. Price Waterhouse (1996), 74 Ohio St.3d 474, 479. Absent a clear abuse of discretion, a trial court's decision on the matter should not be reversed. Mobberly v.Hendricks (1994), 98 Ohio App.3d 839, 845. Again, an abuse of discretion occurs where a court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore,5 Ohio St.3d 217. In the instant action, prejudgment interest was awarded pursuant to R.C. 1343.03 (C) which provides:
 "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based upon tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
Whether a party has made a good faith effort to settle under R. C. 1343.03 (C) is determined by whether he or she has (1) fully cooperated in discovery proceedings, (2) rationally evaluated the risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus. All four criteria must be met. We stress that "whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court" and will not be overturned absent an abuse of discretion. Id. at 159. If, however, a party has a good faith objectively reasonable belief that it has no liability, it is not required to make a settlement offer to avoid payment of prejudgment interest. Id.
at syllabus; Edgerson v. Cleveland Elec. Illum. Co.
(1985), 28 Ohio App.3d 24, 27-28; Egleston v. Fell
(Feb. 9, 1996), Lucas App. No. L-95-127, unreported.
The record reveals that on September 29, 1994, appellee's counsel indicated by letter that Steele's medical expenses and lost wages each exceeded $100,000. Appellant consistently denied liability for the accident and, instead, argued that Washburn and/or Steele was at fault. On May 7, 1997, a month before trial, appellee, by letter, requested that appellant offer her policy limits of $50,000. It is undisputed that appellant made a $10,000 settlement offer on the morning of trial.
A review of the facts in this case demonstrates appellant's good faith belief that she was not liable for appellee's injuries. She admitted that she was intoxicated, and therefore negligent, at the time of the accident. However, the issue of whether her negligence was the proximate cause of appellee's injuries was legitimately disputed. It would be an injustice to penalize a party for exercising her right to trial. Avondet v.Blankstein (1997), 118 Ohio App.3d 357, 370, quotingHardiman v. ZEP Mfg. Co. (1984), 14 Ohio App.3d 222,227-228. Therefore, we find that the trial court abused its discretion when it awarded prejudgment interest to appellee. Accordingly, appellant's fourth assignment of error is well-taken.
 CROSS-APPEAL
In its cross-appeal and first assignment of error, Economy argues that the default judgment was incorrectly entered and voidab initio because Diab never properly served her cross-claim upon Economy.
The original complaint in this action was filed on March 22, 1994. Service of summons was completed as to Diab and Washburn, however, Economy's summons was returned as not deliverable. Diab answered the complaint and asserted a cross-claim against Economy. Steele thereafter filed an amended complaint which enabled service to be perfected against Economy. Diab then filed an amended answer.
On October 11, 1994, Diab filed a motion for default judgment against Economy. The motion was granted on October 14, 1994, however the Judgment Entry was not mailed until October 28, 1994. On October 17, 1994, Economy filed a motion for leave to file an answer to Diab's cross-claim instanter; Economy then filed a motion to vacate the default judgment. On March 12, 1996, Economy filed a supplemental memorandum in support of its motion to vacate. The trial court denied the motion to vacate on June 15, 1998, after Economy had settled with Steele and the conclusion of the trial.
Cross-appellant argues, in its first assignment of error, that service of process was never perfected as to Washburn or Economy because the cross-claim was served upon an attorney who had not made an appearance on the record.
It is axiomatic that proper service of process is needed before a court can render a valid default judgment. Westmoreland v.Valley Homes Mut. Hous. Corp. (1975), 42 Ohio St.2d 291,293-294. Therefore, a default judgment entered where service of process is faulty is void. Id.
Civ.R. 5 of the Ohio Rules of Civil Procedure provides for the filing of pleadings and other materials subsequent to the filing of the original complaint. Civ.R. 5 (A) sets forth when service is required, and states in relevant part:
 "Service is not required on parties in default for failure to appear except that pleadings asserting new or additional claims for relief or for additional damages against them shall be served upon them in the manner provided for service of summons in Civ.R. 4 through Civ.R. 4.6."
Civil Rule 4 through 4.6 provides for the various methods of service of process which, relevant to this case, includes service by certified mail.
Consistent with Civ.R. 5 (A), Ohio courts have held that where a new or additional claim has been asserted and the party is in default of answer to the original complaint, no judgment may be rendered on such claim until the pleading asserting it has been properly served. Kral Builders Supply, Inc. v. Gerl
(1986), 27 Ohio App.3d 353, 355, quoting Household FinanceLoan Corp. v. Weisman (1984), 15 Ohio App.3d 16, syllabus.
In the instant case we first find that a claim for indemnification or contribution is a new or additional claim because the party is placed at a risk of greater liability. SeeFifth Third Bank v. Fitch (Dec. 6, 1993), Licking App. No. 93-CA-67, unreported; and Weaver v. Gorius (Mar. 18, 1986), Tuscarawas App. No. 85A10-079, unreported. Further, it is undisputed that at the time the default judgment was granted, cross-appellant had not filed a response to the original complaint. Thus, the question which must be answered is whether service of the cross-claim conformed to Civ.R. 4 through 4.6. We find we must answer this question in the negative.
The record is devoid of evidence that the attorney served with the cross-claim, Goldstein, had made an appearance in the instant case. Apparently, Goldstein had been the attorney retained in a companion case and had indicated to Diab's counsel that he had been retained in this matter. The validity of such assertion does not change the fact that Diab filed her cross-claim and sent it to an attorney who was not the attorney of record in this case. Thus, service of process was faulty and the subsequent default judgment is void.
Accordingly, cross-appellant's first assignment of error is well-taken.[3]
Based upon our holding in cross-appellant's first assignment of error, we find that the trial court erred when it denied cross-appellant's Civ.R. 60 (B) motion. Accordingly, we find that cross-appellant's second assignment of error is well-taken.
On consideration whereof, as to the direct appeal we find that substantial justice has not been done the party complaining. We find appellant's third assignment of error well-taken and reverse the denial of appellant's motion for set off and remand for further proceedings on this issue. We further find appellant's fourth assignment well-taken and reverse the judgment of the Erie County Court of Common Pleas awarding prejudgment interest to appellee. Costs of this appeal shall be paid by appellee.
On consideration of cross-appellant's appeal, we find that substantial justice has not been done and reverse the default judgment against cross-appellant and remand the matter for further proceedings consistent with this opinion. Costs of this cross-appeal shall be paid by cross-appellee.
 JUDGMENT REVERSED. _______________________________ Melvin L. Resnick, J.
 _______________________________ James R. Sherck, J.
 _______________________________ Mark L. Pietrykowski, J.
CONCUR.
[1] Steele, as parent and natural guardian, also named as plaintiffs his two minor children, James C. Steele and Mariah R. Steele. For clarity, we shall refer to the parties singularly as "appellee" or "Steele".
[2] R.C. 2307.32 (F)was amended and renumbered R.C.2307.33 (F) by Am.Sub.H.B. 350, effective January 27, 1997. On August 16, 1999, the Supreme Court of Ohio found Am.Sub.H.B. 350 unconstitutional in toto. State ex rel. Ohio Academy of TrialLawyers v. Sheward (1999), 86 Ohio St.3d 451. A decision of the Supreme Court of Ohio finding a statute unconstitutional is generally given retrospective application. Wendell v. Ameri-trustCo., N.A. (1994), 69 Ohio St.3d 74, 77. We thus must refer to former R.C. 2307.32 (F) which provides:
 "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person * * *, the following apply:
 "(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;
 "(2) The release or covenant discharges the tortfeasor to whom it was given for all liability for contribution to any other tortfeasor."
[3] In her memorandum in opposition, appellee contends that if this court reverses the trial court's ruling relative to the default judgment, on remand the matter must be reinstated prior to October 14, 1994, the date the default was granted. This court disagrees. A cross-claim may be raised separately and adjudicated independently subsequent to a final determination of liability in the underlying action. Therefore, in the interests of judicial economy and to preserve the general verdict in the underlying trial, the action will proceed from the June 15, 1998 judgment entry denying appellant's motion to vacate default judgment.