JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants appeal from the trial court's judgment entered upon the jury verdict in this medical malpractice case and the trial court's order that granted plaintiff's motion for prejudgment interest. After careful review, we affirm.
 {¶ 2} Plaintiff commenced this action as Adminstratrix of the Estate of Lawrence A. Smith, Jr., Deceased. Mr. Smith died on June 8, 1999 as the result of cardiac arrest. The autopsy report revealed that Mr. Smith suffered from "severe coronary artery atherosclerosis" and indicated a "remote myocardial infarct," which was described by expert testimony as longstanding heart disease and a previous heart attack. Plaintiff maintained that the defendants' negligent medical care and treatment of Mr. Smith caused his death. The record establishes that the decedent was a patient of defendant Franklin Price, M.D. between 1995 and 1999. Decedent, among other things, suffered from diabetes, was overweight, and smoked. Dr. Price repeatedly urged decedent to lose weight and quit smoking. According to Dr. Price, decedent preferred to manage his diabetes through diet and exercise rather than through medication. Decedent had little success losing weight or lowering his high cholesterol levels over the years. Ultimately, Dr. Price prescribed medication for him in April 1999. During the course of decedent's treatment, Dr. Price interpreted EKGs performed on decedent in 1995, 1997, 1998 and 1999.
 {¶ 3} On April 12, 1999, decedent underwent a physical and EKG. Dr. Price stated that he was "a little concerned about the V-6" on that particular EKG, which prompted him to advise decedent to see a cardiologist, Dr. James Lane, for a stress test within the next 30 days. Dr. Price's office notes from that visit indicate "we will give [Mr. Smith] the name of Dr. James Lane at Severence." Dr. Price's receptionist stated at trial that she had no recollection of decedent or a referral to Dr. Lane. Decedent returned to Dr. Price's office on April 26, 1999. Dr. Price did not follow-up on the referral to the cardiologist at that time.
 {¶ 4} Plaintiff suggests that Dr. Price failed to refer decedent to the cardiologist and/or that Dr. Price was negligent in not following up on the referral or not considering such referral as being urgent. She states that decedent would have told her about any referral; would have complied with the doctor's instructions to see Dr. Lane; and would have put an appointment card on the refrigerator, as was his habit. Dr. Price corroborated that decedent was generally a compliant patient. The evidence reflects that when Dr. Price previously referred decedent to another physician for potential prostrate cancer, decedent complied and ultimately underwent surgery.
 {¶ 5} Plaintiff's expert, Dr. Glasser, testified that Dr. Price breached the standard of care in his treatment of decedent. In Dr. Glasser's opinion, the EKGs, when read in conjunction with decedent's history and risk factors, should have raised a concern of underlying heart disease. Dr. Glasser further testified that decedent should have been prescribed medication to lower the risk of heart disease and failure to do so was a breach of the standard of care. Defendants' experts disagree and all testified that Dr. Price met the standard of care under the guidelines that existed during the relevant time of treatment which were known as ATP II.[1] The ATP guidelines changed in 2001, which required certain individuals to be placed on statin drugs who were not required to be medicated under the previous guidelines of ATP II. The studies precipitating these changes were in medical publications in the 1990s.
 {¶ 6} Defendants moved to exclude Dr. Glasser's testimony the day after he had completed his testimony. The court denied the motion. Plaintiff's damages expert determined the economic loss to be between $400,000 and $585,000 and the loss of services to be between $55,459 and $94,476. In addition, plaintiff (who is decedent's widow), and her two adult children testified about the impact that the loss of their husband and father has had on each of them emotionally. Additionally, plaintiff related that she has assumed a second job that requires her to travel across the nation in order to make ends meet in the absence of her late husband's income. Decedent's daughter further testified that she could no longer afford the tuition at the college she attended prior to her father's death.
 {¶ 7} At the close of plaintiff's case and that of the defense, defendants moved for a directed verdict, which the court denied. The jury returned a verdict in favor of plaintiff in the amount of $3,500,000.00. In response to the jury interrogatories, six jurors found that Dr. Price had failed to exercise ordinary, reasonable care in his care and treatment of Lawrence Smith by "failure to follow-up on referral to cardiologist" and "lack of credibility of witnesses" and that such proximately caused the death of Mr. Smith.
 {¶ 8} The trial court denied defendants' post-trial motions for new trial and remittitur. The trial court granted plaintiff's motion for prejudgment interest after an evidentiary hearing. Defendants appeal raising five assignments of error for our review, which we will address in the order asserted and together where it is appropriate for discussion.
 {¶ 9} "I. The trial court erred in failing to exclude the testimony of plaintiff-appellee's expert, Stephen Glasser, MD, since Dr. Glasser failed to satisfy the qualification requirements pursuant to Evid.R. 601(D)."
 {¶ 10} "The qualification of competency of a witness to testify as an expert * * * rests with the trial court, and on appeal, its ruling with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion.'" McCrory v.State (1981), 67 Ohio St.2d 99, 105, quoting Ohio Turnpike Comm. v.Ellis (1955), 164 Ohio St. 377, paragraph eight of the syllabus [other citations omitted]. An abuse of discretion is defined as a decision that is unreasonable, arbitrary or unconscionable, rather than a mere error in judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 11} In relevant part, Evid.R. 601 provides that "Every person is competent to be a witness except * * *
 {¶ 12} "(D) A person giving expert testimony on the issue of liability in any claim asserted in a civil action * * * arising out of the diagnosis, care or treatment of any person by a physician * * * unless the person testifying is licensed * * * and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. * * *"
 {¶ 13} In McCrory, the Ohio Supreme Court held that time-conducting research qualifies as work "so related or adjunctive to patient care as to be necessarily included in the definition of "active clinical practice" for purposes of determining fault or liability in a medical claim. See McCrory, supra, at syllabus; accord Robertson v. Univ.Hospitals of Cleveland, Cuyahoga App. No. 81150, 2002-Ohio-6508, ¶ 35 (finding that "[p]ursuant to McCrory the time [the physician] dedicates to research is considered `active clinical practice.' He, therefore, clearly meets the criteria of Evid.R. 601(D).")
 {¶ 14} The purpose of Evid.R. 601 is to discourage witnesses who devote the majority of their time as being expert witneses and who consequently "lack experiential background in the very field they seek to judge" from testifying against their fellows. McCrory,67 Ohio St.2d at 103; see, also, Crosswhite v. Desai (1989), 64 Ohio St.3d 170, 176-177, quoting McCrory and Wise v. Doctors Hosp. (1982), 7 Ohio App.3d 331,334. "`The rule merely establishes the competence of the witness and the parties are free to attack the credibility of the witness who spends little time in clinical practice.'" Id., quoting Wise,7 Ohio App.3d at 334. In Crosswhite, the court observed that in effectuating the purposes of the Rule, its limitations should not be applied so narrowly that the right of redress in a medical claim collapses under an undue burden. Instead, "once established, the quality of [the expert's] experiential base and the credibility of the witness is subject to attack through cross-examination.
 {¶ 15} No one disputes the qualification of the estate's witness as an expert but only whether he dedicated the requisite amount of his "professional time to the active clinical practice" as required by the rule. On direct examination, the estate's expert testified that he spent all of his time in the clinical practice. In addition, he testified that while epidemiologists generally do not do individual patient care, he indicated that this was not true of him. When asked if his teaching responsibilities encompassed 60 to 80 percent of his professional time, he stated "not currently." When pressed, he explained that the burden of his teaching responsibilities decrease linearly with each passing month. He also elaborated that his research interests are "in the treatment of patients with ischemic heart disease, coronary artery disease, high blood pressure and prevention" and that this is "patient-based research." Moreover, he explained that he could not teach patient-based research unless he was involved in patient-based research; he could not teach people about individual patient care unless he was involved in it; and he needs his background as an internist and cardiologist to be able to teach "as well as to continue to take care of patients."
 {¶ 16} Ultimately, the following testimony was elicited:
 {¶ 17} "Q. Now, you were asked to explain the percentage that you spend teaching, okay. Would you explain to us at this point, what is the percentage of time that you spend in time managing patients, treating patients in the clinical practice of medicine at the present time?
 {¶ 18} "A. So, I guess I need to have clarification because you're talking about what I would consider patient care, patient-based research and other things?
 {¶ 19} "Q. Yes.
 {¶ 20} "A. As we speak today, not yesterday or —
 {¶ 21} "Q. Correct.
 {¶ 22} "A. About fifty percent." (Tr. 197).
 {¶ 23} Applying the foregoing testimony to the applicable law, we find that the trial court did not abuse its discretion by finding the estate's witness competent to testify under Evid.R. 601(D). It is apparent that this witness' testimony adequately established that he has been engaged in medical professional work so related or adjunctive to patient care as to be a part of it. The nature, value, and extent of that experience is a matter of credibility rather than one of competence under the Rule.
 {¶ 24} Based upon the foregoing, Assignment of Error I is overruled.
 {¶ 25} "II. The jury's verdict was a result of improper and prejudicial closing arguments by plaintiff-appellee's counsel."
 {¶ 26} It is well settled that counsel is accorded wide latitude in opening statements and closing arguments. "Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. * * * The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." Pang v. Minch (1990), 53 Ohio St.3d 186, paragraphs two and three of the syllabus. Only if the circumstances are of such reprehensible and heinous nature as to constitute prejudice will this Court reverse a judgment. Hunt v. Crossroads Psychiatric Psychological Ctr. (Dec. 6, 2001), Cuyahoga App. No. 79120, citingKubiszak v. Rini's Supermarket (1991), 77 Ohio App.3d 679, 688, other citation omitted.
 {¶ 27} During rebuttal closing arguments, plaintiff's counsel commented upon defendants failure to call Dr. Lane as a witness.[2]
Dr. Price had testified that he instructed the decedent to see Dr. Lane for a stress test. Dr. Price went on to state that he referred all of his patients in need of a cardiologist to Dr. Lane. Plaintiff questioned whether the referral was ever made. Dr. Lane did not testify at trial.
 {¶ 28} Plaintiff's counsel speculated about what Dr. Lane might have said had he testified. Defendants objected and the trial court overruled this objection. On appeal, defendants assert that trial counsel's comments were designed to mislead the jury and arouse a verdict borne of passion and prejudice.
 {¶ 29} After careful review, we do not find that the identified comments were so reprehensible and heinous in nature as to merit reversal under the abuse of discretion standard. See Mesina v. Lewis (Feb. 10, 1992), Butler County App. No. CA91-03-050, citing, generally, Mead Corp.v. Lane (1988), 54 Ohio App.3d 59, 67.
 {¶ 30} While it is improper to comment upon evidence not in the record, Dr. Price specifically testified about decedent's alleged referral to Dr. Lane as part of his defense.[3] Trial counsel did not purport to know what Dr. Lane would have said but instead speculated as to what he might have said had he seen plaintiff's EKG's. We do not find that the trial court abused its discretion in allowing counsel this latitude under the particular circumstances of this case.
 {¶ 31} Other Ohio and federal courts have observed that it is proper to comment in closing arguments on opposing party's failure to call a person "who, under the circumstances, would have been presumed to be a witness on that party's behalf." Cook v. Krause (May 5, 1978), Ottawa County App. No. OT-77-13, citing Chesapeake Ohio Ry. Co. v.Richardson, 116 F.2d 860 (6th Cir. 1941), certiorari denied, 313 U.S. 574;Penny v. Thurman (1972), 34 Ohio App.2d 190.
 {¶ 32} Moreover, the court specifically instructed and reminded the jury that closing arguments of counsel are not evidence. (Tr. 569). We are to presume that the jury followed the instructions of the trial court. Pang v. Minch (1990), 53 Ohio St.3d 186. For these reasons, Assignment of Error II is overruled.
 {¶ 33} "III. The jury's verdict was against the manifest weight of the evidence.
 {¶ 34} "IV. The jury's award of $3.5 million was clearly excessive and a result of passion and prejudice."
 {¶ 35} "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 655 citing Toledo, Columbus Ohio River RR. Co.v. Miller (1923), 108 Ohio St. 388, 402-403. Further, the trial judge is in the best position to determine whether an award is manifestly excessive or influenced by passion and prejudice. Id., citing, generally, Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40
and Larrissey v. Norwalk Truck Lines, Inc. (1951), 155 Ohio St. 207,219. The trial judge's refusal to set the verdict aside and denial of a motion for a new trial is entitled to deference. Id.
 {¶ 36} In determining whether passion or prejudice influenced a jury's verdict to merit a new trial, the court should consider the amount of damages returned and ascertain whether the record discloses that the verdict was induced by: "(a) admission of incompetent evidence, (b) by misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded." Fromson Davis Co. v. Reider
(1934), 127 Ohio St. 564, paragraph 3 of the syllabus. The mere size of the verdict will not support a finding of passion or prejudice. Sindelv. Toledo Edison Co. (1993), 87 Ohio App.3d 525, 532.
 {¶ 37} A trial court's denial of a motion for new trial is subject to reversal only if the trial court abused its discretion. Dillon v.Bundy (1991), 72 Ohio App.3d 767, 773, citing Yungiwirth v. McAvoy
(1972), 32 Ohio St.2d 285 [other citations omitted]. The trial court does not abuse its discretion in denying a motion for a new trial where the verdict is supported by substantial competent, credible evidence. Id. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 38} Defendants contend that no reasonable juror could have found plaintiff's liability expert more credible than defendants' experts. Defendants base this opinion upon their belief that plaintiff's expert was not qualified to testify. We have previously found that the trial court did not err in finding plaintiff's expert qualified to testify. While defendants' experts outnumber the conflicting testimony of plaintiff's sole expert, this alone does not merit reversal.
 {¶ 39} "The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression, which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." Cross v. Ledford (1954), 161 Ohio St. 469, 477-478, citing Rice v. Cleveland (1944), 144 Ohio St. 299. In this case, the jury cited "lack of credibility of witnesses" as a basis for its finding of liability.
 {¶ 40} Because there is competent, credible evidence to support the jury's verdict, a reversal under the weight of the evidence standard is not warranted.
 {¶ 41} Defendants also contend that the verdict was the improper result of passion and prejudice. Civ.R. 59(A)(4) allows the trial court to grant a new trial in the event of "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." This Court has recognized that the "[f]actors to be assessed in reviewing the exercise of discretion by the trial court under this provision include the excessive nature of the verdict, consideration by the jury of incompetent evidence, improper argument by counsel, or other improper conduct which can be said to have influenced the jury. Fields v. Dailey
(1990), 68 Ohio App.3d 33, 39. To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. Pena v. Northeast Ohio Emergency Affiliates (1995),108 Ohio App.3d 96. The burden is on the moving party to demonstrate that passion and prejudice played a role in the jury's determination. Knor v.Parking Co. of Am. (1991), 73 Ohio App.3d 177. A reviewing court should be particularly circumspect about attributing passion or prejudice to a jury's determination of damages as that is a matter peculiarly in their province. Kluss v. Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528, 539. After all, passion and prejudice are not proved by the size of the verdict. Id." Santoli v. Marbuery (May 14, 1998), Cuyahoga App. No. 72110.
 {¶ 42} Having thoroughly reviewed the record, we do not find that the trial court abused its discretion in denying the motion for new trial on this ground. The jury's assessment of damages was not so overwhelmingly disproportionate to the evidence that it would shock reasonable sensibilities. Plaintiff's damages expert established the economic loss resulting from Mr. Smith's death in the range between $400,000 and $585,000 in addition to the value of his lost services ranging up to $94,476. The jury also heard testimony from decedent's wife of over 30 years and his two children.
 {¶ 43} We do not find that the jury was influenced by incompetent evidence, improper argument by counsel, or other improper conduct that would have improperly influenced it in rendering its verdict.
 {¶ 44} Lastly, we address the trial court's denial of defendants' alternative motion for remittitur. "Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury." Villella v. WaikemMotors, Inc. (1989), 45 Ohio St.3d 36, 40. "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct."Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,651. Given the nature of the evidence in the record, the trial court did not err in denying defendants' alternative motion for remittitur.
 {¶ 45} Assignments of Error III and IV are overruled.
 {¶ 46} "V. The trial court erred in granting prejudgment interest in favor of plaintiff-appellee."
 {¶ 47} The focus of our review is the application of R.C. 1343.03(C), which provides as follows:
 {¶ 48} "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 49} It is not the purpose of this statute to penalize those who go to trial. Avondet v. Blankstein (1997), 118 Ohio App.3d 357, 370, citing Hardiman v. ZEP Mfg. (1984), 14 Ohio App.3d 222, 227-228. Rather, the statute "`only affects those who choose to go to trial and then abuse the trial process, those who fail to conduct a lawsuit in good faith.'" Id. This Court continues to find that "`it would be unconstitutional to penalize a party for exercising his right to a trial.'" Id.
 {¶ 50} The Ohio Supreme Court has established the criteria for determining whether a party has "failed to make a good faith effort to settle" as contemplated by R.C. 1343.03(C) and directs that:
 {¶ 51} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
 {¶ 52} Kalain v. Smith (1986), 25 Ohio St.3d 157, paragraph one of the syllabus. It is generally within the sound discretion of the trial court to determine whether a party's settlement efforts indicated good faith. Id. at 159, citing Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83. However, where the record reflects that a party cooperated fully in discovery, did not unnecessarily delay any of the proceedings and had a reasonable, good faith belief that they had no liability, the trial court abuses its discretion when it awards prejudgment interest against that party. Id. at 159-160.
 {¶ 53} It is undisputed that the plaintiff made a settlement demand upon defendants in September 2001. Plaintiff remained willing to negotiate settlement throughout the proceedings. Defendants opted not to make any settlement offer.[4] The insurance claims file contained evidence from various defense consultants/experts that expressed concerns about certain EKG interpretations and the cholesterol management.[5] Those concerns were echoed by plaintiff's expert's criticisms at trial. The insurance claims file further revealed a persistent awareness and concern over how the jury would receive a certain witness. The evidence and witnesses further reflected an assessment that the case was "defensible but [was] not without concerns or risks." (PJI Tr. 31).
 {¶ 54} The trial court granted plaintiff's motion for prejudgment interest pursuant to R.C. 1343.03(C) and the authority of Moskovitz v.Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638. The court explicitly found that "the party required to pay money in this case failed to make a good faith effort to settle the case, and the party not required to pay moneydid make a good faith effort to settle the case." The record contains evidence that supports the court's determination and precludes a finding of an abuse of discretion.
 {¶ 55} Alternatively, defendants contend that "R.C. 1343.03 is unconstitutional as violative of the right to a jury trial and to due process of law." The Supreme Court, however, has concluded that "R.C.1343.03(C), which authorizes an award of prejudgment interest in a tort action against a defendant who failed to act in good faith to settle, does not violate either the Due Process Clause (Sec. 16, Art. I) or the Right to Jury Trial Clause (Sec. 5, Art. I) of the Ohio Constitution by imposing a penalty for exercise of that right." Galayda v. Lake Hosp.Systems, Inc. (1994), 71 Ohio St.3d 421, paragraph two of the syllabus. The court in Galayda reasoned that the statute in "no way precludes a defendant from insisting on exercising his right to trial by jury nor does it create a `financial barrier that prevents a * * * party from taking his case to a jury.'" Id. at 426 [other citations omitted]. The court also reasoned that an award of prejudgment interest is compensatory and, thus, does not impose a penalty on defendants for exercising their right to a jury trial. Id.
 {¶ 56} To the extent that defendants raise additional or different arguments than those addressed in Galayda, we find those arguments equally without merit. See Edgerson v. Cleveland Electric IlluminatingCo. (1985), 28 Ohio App.3d 24, 28, citing Black v. Bell (1984),20 Ohio App.3d 84; Cox v. Fisher Fazio Foods, Inc. (1984),13 Ohio App.3d 336, 338. Accordingly, Assignment of Error V is overruled.
 {¶ 57} The judgment is affirmed.
Judgment affirmed
Patricia A. Blackmon, J., Concurs.
Michael J. Corrigan, A.J., Dissents.
[1] ATP stands for Adult Treatment Panel. The National Cholesterol Education Program published a report in 1993 that became known as ATP II, which were guidelines for the treatment until they were updated in 2001 by ATP III.
[2] While defendants refer to additional remarks made in closing arguments they failed to assert a timely objection to those comments below. We do not find a gross and persistent abuse of privilege by counsel and therefore the defendants' arguments in this regard were waived. Eastin v. Eastin-Rossi (Dec. 1, 1988), Cuyahoga App. No. 54660, citing Norwood v. Forest Converting Co. (1984), 16 Ohio App.3d 411.
[3] See Boyd v. Bridges (Jan. 13, 1998), Summit App. No. 13136. InBoyd, defense counsel commented upon his own failure to call a witness and then proceeded to supply the nature of this absent witness' testimony. Those comments are wholly distinguishable from the comments under our examination here.
[4] Although defendants offered to enter a high/low agreement with plaintiff capping their potential damage at $500,000 in the midst of trial, defense counsel testified he did not consider this a settlement offer.
[5] These same experts issued reports concluding that Dr. Price met the requisite standard of care for an internist yet these reports were silent on their concerns that were detailed in other documents. The reports were never produced in this case and those experts were never deposed.