JOURNAL ENTRY AND OPINION
{¶ 1} Defendants David M. Raiffe, D.D.S. and David M. Raiffe, D.D.S., Inc. ("defendant") appeal from the order of the trial court that directed a verdict in favor of plaintiff, Marian Condello, on the issue of liability, in Condello's action for dental malpractice. For the reasons set forth below, we affirm.
 {¶ 2} On October 5, 2001, plaintiff filed this action against defendant, alleging that he had negligently performed a root canal procedure and related dental care. Defendant denied liability and the matter proceeded to a jury trial on May 19, 2003.
 {¶ 3} For her case, plaintiff presented the testimony of defendant upon cross-examination, Carol Foster, and Dr. Michael Dagostino.
 {¶ 4} Defendant testified that he examined plaintiff on April 27, 1998, and that she complained of a toothache in the lower left side of her mouth which was sensitive to heat, cold, sweets and pressure. Defendant determined that tooth no. 18 was in need of root canal therapy, a procedure that involves opening the chewing surface of the tooth, removing the diseased tissue from the root canal of the tooth, refilling the canal with gutta percha (a rubber-like material), and resealing the top of the tooth with a crown.
 {¶ 5} Defendant commenced the procedure that day. He applied anesthesia, cleaned out the tooth using a number 20 file, inserted "formo," a medication, and temporarily closed off the tooth with cotton.
 {¶ 6} Defendant further stated that plaintiff returned to the office on May 18, 1998, for final fill of the tooth. At this time, defendant used a number 25 file, i.e, a wider file than the one he had previously used, to continue to clean out the tooth. Defendant claimed that he took "measuring x-rays" but they were not among the x-rays contained within his file. He stated that the apices of the roots of tooth no. 18 were in very close proximity to the inferior alveolar nerve canal and he admitted that the filling material went "at least as deep as the inferior alveolar canal." (Tr. 40). He further admitted that, if the apex of the tooth root were overfilled, there is a good chance of damaging the inferior alveolar nerve.
 {¶ 7} Defendant acknowledged that plaintiff returned to the office on May 23, 1998, complaining of numbness and pain on the lower left side of her lip and gum tissue. Defendant prescribed pain medication and antibiotics. Plaintiff returned one week later, with the same complaint. At this time, defendant prescribed a different antibiotic and a steroid.
 {¶ 8} Defendant refilled the tooth on June 6, 1998. Two days later, however, plaintiff again complained of numbness and pain in the lower left portion of her mouth. Plaintiff's complaints continued into July 1998, and defendant treated her with a desensitizing agent, and also adjusted a "bite guard" for her. According to defendant's records, plaintiff stated that she had experienced pain and numbness since the May 18, 1998, visit, but she did not wish to have the tooth extracted, and opted instead to complete the final phase of the root canal therapy, preparation of a crown for the tooth. By the end of July, however, the numbness had not abated and defendant referred plaintiff to an oral surgeon.
 {¶ 9} Defendant next reviewed the notes pertaining to plaintiff's subsequent treatment, including notes from Dr. Michael Dagostino, which indicated that after extracting the tooth, Dr. Dagostino observed that the conduit which contains the inferior alveolar nerve was ruptured and gutta percha, the filling used in the root canal therapy, was in the nerve. Defendant admitted that it is not within the standard of care to put fill material into the nerve when conducting a root canal (Tr. 68) and that it is not within the standard of care to disrupt or damage the inferior alveolar nerve during a root canal. (Tr. 71).
 {¶ 10} Plaintiff testified that her teeth were in good condition prior to seeing defendant, but she did have a cavity in one of her lower left teeth. Following the May 19, 1998 appointment, she experienced pain and numbness on her face and lip that extended to her chin. Plaintiff further testified that, during the May 23, 1998 appointment, defendant told her that the "filling went too far down and he would have to go in and get it." (Tr. 79). According to plaintiff, defendant indicated that the pain and numbness would be temporary. Plaintiff continued to experience these symptoms, however, and she eventually saw Dr. Dagostino, who extracted the tooth and then referred her to a neurologist.
 {¶ 11} Plaintiff further testified that the pain still comes and goes, the pain in her lip has diminished, but the numbness and stiffness has continued since 1998.
 {¶ 12} Plaintiff's sister, Carol Foster, testified that she observed that plaintiff had become depressed due to the condition of her mouth and she referred her to Dr. Dagostino.
 {¶ 13} Dr. Michael Dagostino testified via videotape. He stated that he has been a dentist since 1984. His practice includes endodontics, including root canal therapy, and he has testified as an expert in approximately six other matters. Dr. Dagostino stated that a dental procedure generally begins with an initial or preoperative x-ray. If a root canal is necessary, measuring x-rays must be taken in order to determine the length of the roots of the tooth in relation to the nerves.
 {¶ 14} Dr. Dagostino further testified that he examined plaintiff on August 8, 1998. At this time, plaintiff complained that she had experienced pain and numbness following a root canal. He reviewed the x-rays which defendant had taken. Some of defendant's x-rays did not reveal the apex of tooth no. 18, but another clearly revealed that the "apex was in conjunction with the inferior alveolar." (Tr. 26). In another x-ray, it was evident that the gutta percha and sealer were installed past the apex of the tooth and intruded into the bony conduit that encases the inferior alveolar nerve.
 {¶ 15} Dr. Dagostino extracted the tooth in order to relieve pressure on the nerve. Following the extraction, he observed fill material in the inferior alveolar nerve. According to Dr. Dagostino, defendant impinged and severed the nerve on May 18, 1998, thereby causing sensory deficits and pain in the lower jaw, and defendant did not meet the standard of care that an ordinary dentist would have shown in performing this procedure. Moreover, with regard to the follow-up care, Dagostino opined that plaintiff's complaints should have apprised defendant that a nerve had been damaged, and defendant should have taken additional x-rays, which would have revealed that plaintiff's symptoms were caused by nerve injury rather than infection.
 {¶ 16} Dr. Dagostino admitted on cross-examination that depending upon the position of the nerves, over-instrumentation and overfilling of a tooth can be within the standard of care. He also admitted that he sent plaintiff literature regarding another dental lawsuit and she then asked him to be her expert witness in this matter.
 {¶ 17} For its case, the defendant presented the testimony of Dr. Kenneth Jones and Dr. Edward Falkner. Dr. Raiffe also testified on his own behalf.
 {¶ 18} Dr. Jones stated that he has been practicing general dentistry, including endodontics, since 1972, and that he teaches and has previously testified as an expert witness in dental malpractice cases. Dr. Jones testified that it is difficult to visualize the precise location of the mandibular canal from an x-ray, which is two dimensional. From the x-rays in this matter, the canal was approximately three or four millimeters beneath the apex of the tooth. (Tr. 138). He also stated that the overfill was about three or four millimeters past the apex of the tooth (Tr. 143). He testified that in and of itself, an overfill does did not necessarily constitute a deviation from the standard of care, (Tr. 144) and that the that the "treatment was well diagnosed." (Tr. 152). He stated, however, that "It's certainly not something we desire * * *. It's an unfortunate consequence." (Tr.144).
 {¶ 19} Dr. Jones further testified that a patient may develop an infection following a root canal and that it is reasonable to prescribe antibiotics following a procedure. For patients who complain of pain and numbness, antibiotics may also be indicated if there is an infection which is compressing the nerve. According to Jones, plaintiff's condition was the result of nerve trauma which was probably caused by inflammation, and would improve over time. On cross-examination, Jones admitted that he was not given any measuring x-rays to review. He also could not rule out the possibility that there had been over-instrumentation of the tooth and overfill of the tooth into the inferior alveolar nerve canal. Dr. Jones acknowledged that invasion of the inferior alveolar canal is an occurrence that "[w]e don't ever want * * * to happen" (Tr. 214), (see, also, Tr. 222), and that overfill to the point of causing injury to the inferior alveolar nerve was probably not within the standard of care. Finally, he admitted that he did not dispute that substandard care had caused plaintiff's injury. (Tr. 225).
 {¶ 20} With regard to defendant's follow-up care, Jones admitted that the record does not contain any notations of symptoms of infection, and the prescribed antibiotics did not diminish plaintiff's symptoms. He also acknowledged that he would have suspected nerve injury in light of plaintiff's complaints.
 {¶ 21} Dr. Edward Falkner, an endodontist with over forty years experience, testified undesirable outcomes are not necessarily the result of negligence and that the overfill was not substandard care.
 {¶ 22} On cross-examination, Dr. Falkner admitted that in performing a root canal, it is important to determine the location of nerve structures in relation to the roots of the teeth. He also admitted that if the root apex is very close to the inferior alveolar canal, the standard of care is to keep the fill near the root tip. (Tr. 247). If the conduit were breached by over-instrumentation, then the fill would follow the path of the instrument.
 {¶ 23} Dr. Falkner also admitted that in this instance, he could not locate any measuring x-rays. In observing x-rays taken following the fill of the tooth, Dr. Falkner also admitted that there was gutta percha plugging up the canal and that there was an extensive overfill. He then stated that considering the overfill in relation to the proximity of the inferior alveolar canal, "I can't tell you positively that it's not within or that it is within the standard of care." (Tr. 255). Finally, he admitted that over-instrumentation and/or overfilling into the inferior alveolar nerve canal during the course of a root canal is not within the standard of care. (Tr. 259). He also acknowledged that nerve injury may have resulted in this matter in light of plaintiff's continuing sensory problems following the procedure.
 {¶ 24} Dr. Falkner also admitted that on June 3, 2002, he rendered a report in which he opined that defendant's care was substandard in relation to over-instrumentation, overfill to the surrounding bone, and in failing to advise the plaintiff of the true cause for her symptoms. He claimed that upon further consideration, it was his opinion that overfilling does not per se breach the standard of care but could constitute a breach of the standard of care depending upon the extent of the overfill and the extent of any manipulation with a file within the canal. (Tr. 302). Finally, Dr. Falkner admitted that it is never within the standard of care to overfill to the extent that the inferior alveolar canal is breached, (Tr. 301), and that defendant had breached the standard of care in this instance. (Tr. 302).
 {¶ 25} Defendant testified that he has been a licensed dentist for twelve years and also does endodontics. He testified that he examined plaintiff in April, 1998. He determined that tooth no. 18 had an abscess or was infected and would either need a root canal or would have to be extracted. Plaintiff wanted to save the tooth and he reportedly explained the risks of the root canal procedure to her, including bruising, tingling, and more rarely, numbness.
 {¶ 26} Defendant stated that he took length x-rays but he admitted that his records do not note that he did so. He testified that he intended to perform an overfill so that the tooth would not become reinfected from the bottom. During the procedure, he used a formatron which would have alerted him when he was near the root tip. He admitted that it is necessary to exercise caution because the bony covering over the nerve is very thin. He did not intend to overfill to the extent that the fill invaded the inferior alveolar canal, but he admitted that this is what happened in this matter. Defendant testified that there had been an unfortunate outcome; he did not know if this outcome was avoidable. (Tr. 359).
 {¶ 27} With regard to the follow-up care, he admitted that he now realizes that plaintiff's symptoms were in fact a complication of the procedure.
 {¶ 28} At the close of the evidence, the trial court directed a verdict in favor of plaintiff on the issue of liability, concluding that "plaintiffs have proven their case well beyond a preponderance of the evidence" (tr. 402) as defendant's experts admitted that the root canal was performed below the standard of care and that defendant was negligent. (Tr. 404). The matter was then submitted to the jury on the issue of damages and plaintiff was awarded $67,000. On June 5, 2003, plaintiff filed a motion for prejudgment and post-judgment interest. Following a hearing, the trial court determined that defendant failed to make a good faith effort to settle the matter, and that plaintiff had not failed to make a good faith effort to settle, and it granted the motion.
 {¶ 29} Defendant now appeals and assigns two errors for our review.
 {¶ 30} In his first assignment of error, defendant asserts that the trial court erred in granting plaintiff's motion for a directed verdict as to liability because, he claims, reasonable minds could conclude that defendant met the standard of care in this instance. Specifically, defendant asserts that the evidence established merely that the procedure resulted in a bad outcome, and did not establish an act or omission to do a particular thing that a dentist of ordinary skill would have done differently.
 {¶ 31} We conduct a de novo review in order to determine whether the trial court properly entered a directed verdict.Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13, 656 N.E.2d 957; Keeton v. Telemedia Co. of S. Ohio (1994),98 Ohio App.3d 405, 409, 648 N.E.2d 856.
 {¶ 32} The motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); Crawford v. Halkovics (1982),1 Ohio St.3d 184, 438 N.E.2d 890; Limited Stores, Inc. v. Pan Am.World Airways, Inc. (1992), 65 Ohio St.3d 66, 1992 Ohio 116,600 N.E.2d 1027. The motion does not test the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories,77 Ohio St.3d 116, 119-120, 1996 Ohio 85, 671 N.E.2d 252; Rutav. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69,430 N.E.2d 935. Rather, it involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v.Tanner (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141.
 {¶ 33} A motion for a directed verdict is properly granted when the party opposing it has failed to adduce any evidence on one or more essential elements of this claim. Id.; Cooper v.Grace Baptist Church (1992), 81 Ohio App.3d 728, 734,612 N.E.2d 357. However, where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334, 338.
 {¶ 34} In order to establish a claim for dental malpractice, the plaintiff.
 {¶ 35} "* * * must establish, by expert testimony, the requisite standard of skill and care of physicians in the medical community, the negligent failure of the defendant to render treatment in conformity with the standard and the proximate causation of the plaintiff's damages by the defendant."Steinmetz v. Francis J. Lowry, D.D.S. Assoc. Inc. (1984),17 Ohio App.3d 116, 477 N.E.2d 671, citing Bruni v. Tatsumi
(1976), 46 Ohio St.2d 127, 346 N.E.2d 673. Accord Rogoff v.King (1993), 91 Ohio App.3d 438, 632 N.E.2d 977.
 {¶ 36} Applying all of the foregoing, we hold that in this matter the trial court properly directed a verdict in favor of plaintiff on the issue of liability. Construing the evidence most strongly in favor of defendant, reasonable minds could only conclude that defendant negligently deviated from the requisite standard of care in connection with both the root canal procedure and his follow-up care. Specifically, with regard to the root canal, plaintiff's evidence demonstrated that although the apices of the roots were in close proximity to the inferior alveolar nerve canal, defendant exceeded the tooth root, broke through the bony conduit encasing the nerve, then overfilled the tooth past the root apex, and into the nerve, causing nerve injury. In addition, with regard to his follow-up care, plaintiff's evidence demonstrated that defendant deviated from the standard of care by repeatedly prescribing antibiotics, pain medication and other measures and in failing to treat plaintiff for the nerve injury.
 {¶ 37} Moreover, although the defense presented evidence that in general, overfill can be within the standard of care, defendant failed to produce any evidence from which a reasonable person could conclude that the treatment rendered herein was within the standard of care. Dr. Kenneth Jones testified on direct examination that, in general, it is within the standard of care to overfill a tooth or to permit the sealer to extend past the apex of the tooth, and that in and of itself, this does did not constitute a deviation from the standard of care. On cross-examination, however, he admitted that invasion of the inferior alveolar canal is an occurrence that "[w]e don't ever want * * * to happen" (Tr. 214), that overfill to the point of causing injury to the inferior alveolar nerve was probably not within the standard of care, and that he did not dispute that substandard care had caused plaintiff's injury. (Tr. 225).
 {¶ 38} Similarly, Dr. Falkner testified for the defense but admitted that, in performing a root canal, it is important to determine the location of nerve structures in relation to the roots of the teeth and that while working on a tooth root in close proximity to the inferior alveolar nerve, it is good practice to keep the filling near the tip of the root and that overfilling which disturbs the nerve is not within the standard of care. He could not identify any instance wherein it would be within the standard of care to overfill to the extent that the inferior alveolar nerve canal is breached. Dr. Falkner also admitted that there was gutta percha plugging up the canal, that it was an extensive overfill, and that nerve injury may have resulted in this matter in light of plaintiff's continuing sensory problems following the procedure.
 {¶ 39} Finally, defendant admitted that plaintiff's inferior alveolar nerve was damaged during the root canal but he stated that he did not intend to have the fill intrude into the nerve canal. He testified that there had been an unfortunate outcome and he did not know if this outcome was avoidable. Accordingly, we agree with the trial court's determination that reasonable minds could only conclude that defendant did not meet the standard of care in performing the root canal.
 {¶ 40} Defendant maintains that he advised plaintiff that numbness could result from the procedure, but it is well-established that a patient cannot, as a matter of law, assume the risk of the health care provider's separate act of medical malpractice. Deagan v. Dietz (March 29, 1996), Mahoning App. No. 94 C.A. 75, citing Littleton v. Good Samaritan Hosp. Health Ctr. (1988), 39 Ohio St.3d 86, 529 N.E.2d 449.
 {¶ 41} Defendant also argues that the evidence merely demonstrates that plaintiff suffered an injury. We recognize that there is no presumption of malpractice from the mere fact that the plaintiff sustained an injury. Hudson v. Mt. Sinai Med.Ctr. (June 8, 1995), Cuyahoga App. No. 68217, citing Ault v.Hall (1928), 119 Ohio St. 422, 420, 164 N.E. 518. See, also,Turner v. Children's Hosp., Inc. (1991), 76 Ohio App.3d 541,602 N.E.2d 423. As outlined previously, however, the evidence did not merely demonstrate that plaintiff had sustained an injury. Rather, the evidence established that the standard of care requires the practitioner to locate nerve structures near the nerve root, overfilling and over-instrumentation of a tooth such as to disturb the underlying nerve is not within the standard of care, and that defendant breached the standard of care in this matter by exceeding the apex of the root, invading the bony nerve casing, and overfilling the tooth, thereby injuring the nerve.
 {¶ 42} Finally, with regard to the follow-up care, plaintiff's evidence demonstrated that defendant should have taken additional x-rays, which would have revealed that plaintiff's symptoms were caused by nerve injury rather than infection, and should have treated her accordingly. In opposition, Dr. Jones testified that patients may develop infections following root canal, but Dr. Jones also admitted that in this matter, he would have suspected that plaintiff had sustained nerve injury. Likewise, defendant admitted that he now recognizes that plaintiff's post-procedure symptoms were not an infection but were instead due to a complication from the procedure. Accordingly, we agree with the trial court's determination that reasonable minds could only conclude that defendant's follow-up care of plaintiff did not meet the standard of care.
 {¶ 43} The first assignment of error is without merit.
 {¶ 44} In his second assignment of error, defendant asserts that the trial court abused its discretion in awarding plaintiff prejudgment interest.
 {¶ 45} R.C. 1343.03(C) provides for prejudgment interest and states:
 {¶ 46} "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 47} It is well-settled that R.C. 1343.03(C) was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting. Kalain v. Smith
(1986), 25 Ohio St.3d 157, 159, 495 N.E.2d 572. The statute serves the additional purpose of compensating a plaintiff for a defendant's use of money which rightfully belonged to the plaintiff. Musisca v. Massillon Community Hosp. (1994),69 Ohio St.3d 673, 676, 635 N.E.2d 358.
 {¶ 48} In Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 657, 635 N.E.2d 331, the Ohio Supreme Court held that R.C. 1343.03(C) has four requirements: (1) the party seeking prejudgment interest must petition the court by motion within fourteen days after entry of judgment; (2) the trial court must hold a hearing on the motion; (3) before awarding prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle; and (4) the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case.
 {¶ 49} The Court further held that if a party meets all four requirements, the motion should be granted. Id. The Court further held, however, that the trial court is vested with discretion to determine whether a party made a good faith effort to settle. Id.
 {¶ 50} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Kalain v. Smith (1986), 25 Ohio St.3d 157,495 N.E.2d 572, paragraph one of the syllabus.
 {¶ 51} In this matter, at the hearing on the motion for prejudgment interest, it was established that the case was originally filed in January 2000 and defendant did not make an offer to settle the case during its pendency through October 2000. After the matter was re-filed in October 2001, plaintiff demanded $75,000. The trial court referred the matter to mediation. In response, defendant filed a Motion for Reconsideration which indicated that "defendant has not consented as required to potentially settle the matter." (Doc. 14). Thereafter, in December 2002, defendant offered $6,000. Before trial, plaintiff lowered her demand to $60,000 and defendant offered $10,000. The trial court determined that defendant had not made a good faith effort to settle because it did not want to go to mediation, and had offered only $10,000 at the final pretrial.
 {¶ 52} We find no abuse of discretion. We find it significant that defendant did not wish to participate in mediation. At the time he filed a motion seeking reconsideration of the referral to arbitration, defendant had already received plaintiff's expert reports outlining the nature of the injury and areas of substandard care. In addition, by July 2002, defendant's own expert had opined that there had been an overfill of the tooth with gutta percha and the "apices of the roots of the molar were evidently close to the mandibular canal and may have impinged on the nerve within," and the procedure ended "with an undesirable result."
 {¶ 53} Defendant insists that its actions were justified by plaintiff's own lack of good faith since her initial demand of $25,000 was increased to $75,000 at the time of mediation. While logic suggests that a plaintiff's demand would decrease during the course of a negotiation, we do not adopt herein a per se rule that any increases in the demand constitute lack of good faith, as the realities of trial preparation dictate that the demand may increase as additional time and resources are expended in preparing for trial. In any event, we believe that after defendant sought reconsideration of the referral to arbitration because defendant did not wish to settle, plaintiff was relieved of the obligation to continue negotiation efforts when those efforts would be in vain. Wagner v. Midwestern Indemn. Co.
(1998), 83 Ohio St.3d 287, 293, 699 N.E.2d 507, referring toGalayda v. Lake Hosp. Sys., Inc., (1994), 71 Ohio St.3d 421,429, 644 N.E.2d 298. The trial court did not abuse its discretion in determining that defendant did not make a good faith effort to settle, and plaintiff did use good faith.
 {¶ 54} Defendant next complains that the prejudgment interest statute violates the constitutional right to a jury trial and the right to due process. We rejected these contentions in Smith v.Sass, Friedmann Assocs., Cuyahoga App. No. 81953, 2004-Ohio-494, citing Galayda v. Lake Hosp. Systems, Inc.
(1994), 71 Ohio St.3d 421, 1994 Ohio 64, 644 N.E.2d 298, paragraph two of the syllabus and Edgerson v. Cleveland ElectricIlluminating Co. (1985), 28 Ohio App.3d 24, 28, 28,501 N.E.2d 1211.
 {¶ 55} In accordance with the foregoing, defendant's second assignment of error is without merit.
 {¶ 56} The judgment is affirmed.
Judgment affirmed.
 Calabrese, Jr., J., Concurs in Judgment only.
 Timothy E. McMONAGLE, J., Concurs in judgment only withattached concurring opinion.